UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

                                Plaintiff,

       - against -

LOUIS TOMASETTA AND
EUGENE HOVANEC,

                         Defendants.
------------------------------------------------------------X

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: <u>March 30, 2012</u> |

10 Cr. 1205 (PAC)

<u>ORDER</u>

HONORABLE PAUL A. CROTTY, United States District Judge:

       On February 27, 2012, Defendants Louis Tomasetta and Eugene Hovanec ("Defendants")
moved <u>in</u> <u>limine</u> to preclude three sell-side securities analysts from offering lay witness opinion
testimony, arguing that:  Government was tardy in disclosing its intent to call such witnesses; the
testimony is improper under Fed.R.Evid. 701; and, in any event, the testimony is irrelevant.  On
March 7, 2012, the Government submitted a perfunctory three paragraph response which did not
respond to the tardiness argument.  Rather than describe what the proposed testimony would be,
its relevance, or its materiality to the case at hand, the Government instead was content with the
bland assurance that it did not intend to elicit improper testimony.  After Defendants submitted a
reply brief on March 16, 2012, the Government submitted a sur-reply on Saturday March 17,
2012, which belatedly came to partial grips with Defendants' objections.[1]  At the final pretrial
conference, on March 19, 2012, the Court granted Defendants' motion <u>in</u> <u>limine</u>, explaining that
it was "troubled by the fact that the disclosure of the three names is late.  I don't think that the
information that's being offered, the proposed testimony falls within the rule of Rule 701.  And I
have doubts about the relevance of what the analysts are testifying to."  (Mar. 19, 2012 Tr. at

---

[1]  As the Defendants rightly note, the Government's sur-reply is not contemplated under the Court's
individual rules of practice.

19.)  The Court was concerned that the analyst would testify about the ultimate issues which the jury must decide.

The Government now moves for reconsideration.  While the Court is reluctant to condone the Government's tardiness and the initial paucity of details, subsequent events, including testimony at trial, support reconsideration.  Upon reconsideration, the Court finds that the proposed testimony, as proffered in the Government's March 21, 2012 letter, is admissible as either relevant fact testimony, or under Fed.R.Evid. 701, and therefore overrules Defendants' objections.  The security analysts will be permitted to testify subject to the limitations discussed below.  In light of the length of the trial, the number of witnesses and the voluminous documents in evidence, the Government should try to have only one witness.  The Court will not permit redundant testimony.

## DISCUSSION

There is no doubt concerning the inadequacy of the Government's tardy disclosures of its intent to call up to three sell-side security analysts.  Nor is there any doubt that the Government was delinquent in offering a sufficient proffer to the Court as to the content of the proposed testimony and why (in the Government's view) the testimony is admissible.  The Government was required to provide a witness list to the Defendants by November 21, 2011.  (See Dkt. No. 52.)  Despite having met with Sirini Pajjuri, William Harrison, and Allan Mishan, the three proposed securities analyst at issue,[2] by November 4, 2011, the Government did not notify the Defendants that these analysts may be called as witnesses until January 13, 2012.[3]  Indeed, even on January 13, the Government only disclosed that it "may" call three sell-side analysts.

---

[2]  The Government has since indicated that it does not intend to call Allan Mishan as a witness.
[3]  The Government notes that it produced Jenck Act material for these three individuals on November 21, 2011.

The Defendants', having already been precluded from calling expert witnesses, filed a timely motion in limine to exclude improper lay opinion testimony by the security analysts, raising serious concerns about the admissibility of such testimony under Rule 701.  The Government submitted an opposition that was, at best, very abbreviated and certainly unhelpful. In light of an estimated five week trial, with numerous witnesses and hundreds of exhibits, the Government's attempts to belatedly add three more witnesses, without a clear indication as to their testimony, the Court granted the in limine motion.

The Court has now had the benefit of receiving the Government's subsequent (and sufficiently detailed) proffer, having heard the parties' opening statements, and in view of the testimony during the past five days of trial in which transcripts of Vitesse's earnings calls with analysts calls were received in evidence,[4] Vitesse's press releases were received in evidence,[5] and several witnesses have testified that Vitesse's Board members and/or executives discussed how analysts' expectations compared with Vitesse's guidance and actual performance.[6]  Based on this information, the Court finds that the proffered security analyst testimony is admissible as either relevant fact testimony or lay witness opinion testimony that satisfies Fed.R.Evid. 701.[7]

---

[4]  See GX150-159 (transcripts of Vitesse's conference calls)

[5]  See GX 101-120 (Vitesse's press releases, which discuss revenue and include quotes by Tomasetta.).

[6]  See e.g., Mar. 27, 2012 Tr. at 590 (On cross-examination, Lewis was asked whether "[t]he company would compare the guidance that it was giving with the guidance or with the projections that analysts were printing in their published reports?" and answered "Yes."); Mar. 23, 2012 at 159-160 (Williams testified on direct that she spoke with Mody about "where the revenue was actually coming in for the quarter. . . and then also what the target was and how meeting the target was very important as a result of the street" and explained that the "street" meant that the "stock price would be reflective of what the anticipated revenues were of the company and thereby if the company did not hit those targets, the stock price could be negatively impacted.")

[7]  "Even where the court's [prior] ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."  Fed.R.Evid. Rule 103 (Advisory Committee Notes 2000 Amendment).  To the extent that Local Rule 6.3 applies to evidentiary issues, and the Court is not convinced that it does, the Government's proffer presents new matters which the Court may consider, in the exercise of its discretion. See United States v. Abel, 469 U.S. 45, 54 (1984) ("A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal

Much of the proposed testimony is fact testimony by a percipient witness that is relevant to the jury's determination of materiality and intent.[8]  Specifically, the Governments seeks to introduce testimony regarding:

- What research analysts do, and how they serve their clients, the investors, with research reports making investment recommendations on companies within a particular sector of the economy;

- The kinds of clients the analysts had during the relevant period;

- The analysts focus on the semi-conductor industry and the specific companies within the industry that they covered;

- The time period in which the analysts covered Vitesse;

- The sources of information the analysts used to analyze Vitesse's financial condition between 2001-2006, including the company's filings with the SEC, such as the 10-Ks and 10-Qs; the company's press releases and earnings calls; industry conferences; quarterly guidance; and informal conversations with management, among others;

- What specific information from the above list that the analysts read, heard, asked about, or learned about;

- Whether the analysts looked for specific trends or growth;

- How the analysts used the information listed above to write reports and make investment recommendations for their clients about whether to invest in Vitesse;

- What the analysts wrote in some of their reports;[9]

- Whether the analysts changed their ratings of Vitesse over time;

---

Rules.); Helling v. McKinney, 509 U.S. 25, 35 (1993) (holding that district courts have "authority to control the order of proof").

[8]  Under Fed.R.Evid. 401, "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence."

[9]  While the Government has pre-marked thirteen Merrill Lynch analyst reports (GX 410-422), for example, neither the Government nor the Defendants will be permitted to review these thirteen reports with the witness.  Doing so would be redundant, and a waste of the jury time.  The parties will be limited to reviewing 2-3 analyst reports with the securities analyst witness.  Presumably the parties will want to focus on the analyst's reports on or around September 30, 2005 (the date of the 2005 10-K underlying Count Four) and December 31, 2005 (the date of 10Q underlying Count Five), though the Court leaves that decision up to the parties.  The analyst will be permitted to explain how he defines the terms he uses in his reports.

- Whether any of their clients invested in Vitesse, and what kind of clients they were.

This is fact testimony, and relevant because the information the analysts learned and passed along to their clients will aid the jury in determining the materiality of the disclosures to a reasonable investor.[10] Courts have allowed comparable analyst testimony in securities fraud cases. (See e.g., Gov't Mar. 19, 2012 Ltr. Ex. C (transcript from United States v. Rigas, 02 Cr.1236 (LBS) at 3625, 3628)). The above fact testimony is thus admissible.

The Government also seeks to introduce opinion testimony. Rule 701 of the Federal Rules of Evidence provides that lay witness opinion testimony must be "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical or other specialized knowledge within the scope of Rule 702." Testimony that "undertakes to tell the jury what results to reach . . . does not aid the jury in making a decision, but rather attempts to substitutes the [witness's] judgment for the jury's." United States v. Duncan, 42 F.3d 97, 101 (2d Cir. 1994). Testimony regarding the disclosures that an analyst was interested in and why, however, is helpful to the jury and has been admitted in securities fraud trials. See Rigas, 02 Cr.1236 (LBS), United States v. Ebbers, 02 Cr. 1144 (BSJ); see also United States v. Ferguson, --- F.3d ---, 2011 WL 6351862, at *8 n.10 (2d Cir. 2011) (favorably citing the use of security analyst testimony to prove materiality).

"A witness's specialized knowledge, or the fact that he was chosen to carry out an investigation because of this knowledge, does not render his testimony 'expert' as long as it was based on his 'investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise . . . .'" United States v. Rigas, 490 F.3d 208, 224 (2d Cir.

---

[10] Indeed, some prospective jurors noted during jury selection that they periodically receive, but do not read, company reports, but some of them retain a financial service or advisor to provide advice concerning their investments.

2007) (quoting <u>Bank of China, New York Branch v. NBM LLC</u>, 359 F.3d 171, 181 (2d Cir. 2004)). "Such opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his [ ] position in the business." <u>Bank of China</u>, 359 F.3d at 181. "If, however, the witness's testimony was 'not a product of his investigation, but rather reflected [his] specialized knowledge,' then it was impermissible expert testimony." <u>Rigas</u>, 490 F.3d at 490 F.3d 208 (quoting <u>Bank of China</u>, 359 F.3d at 182). Additionally, if the testimony is not "the product of reasoning processes familiar to the average person in everyday life," then it is not admissible under 701. <u>United States v. Garcia</u>, 413 F.3d 201, 215 (2d Cir.2005) (citing 2000 Advisory Committee Notes).

The proposed analyst testimony in this case easily satisfies the first prong, as it is based on the analysts' perceptions at the relevant time, as discussed above.

With respect to the second prong, the Government must not elicit testimony regarding whether the analysts thought that the disclosures would have been material to an investor, because such testimony invades the province of the jury. Opinion testimony will be limited to only that which is based on what the analyst specifically read in Vitesse's disclosures, heard from Vitesse, asked about, or otherwise learned about Vitesse. Such testimony may include:

- Which of the specific financial metrics in the 10-Ks and 10-Qs that the analyst read, heard about, asked about or otherwise learned about, and why such information was of interest;

- Which of the expenses (if any), including one-time expenses, that the analyst read about, heard about, asked about or otherwise learned about, did the analysts focus on;

- Whether stock option compensation expense were of interest to the analysis;

- Which components (if any) of the company's balance sheet that the analyst read, heard about, asked about or otherwise learned about, was of interest to the analyst;

- Whether any of the disclosures that the analyst read, heard about, asked about or otherwise learned about, provided the analysts with an understanding of Vitesse's revenue recognition policy, including how it counted its sales to the distributor; and if so, what was the analyst's understanding;

- Whether any of the disclosures that the analyst read, heard about, asked about or otherwise learned about, provided the analysts with an understanding regarding whether Vitesse counted a sale to a distributor as revenue, or counted a sale to a customer as revenue; and if so, what was the analyst's understanding;

- Whether any of the disclosures that the analyst read, heard about, asked about or otherwise learned about, provided the analyst with an understanding of Vitesse's policy of counting returns against revenues; and if so, what was the analyst's understanding;

- Whether any of the disclosures that the analyst read, heard about, asked about or otherwise learned about, provided the analyst with an understanding about Vitesse's policy of granting stock options and recording expenses; and if so, what was the analyst's understanding;

- Whether Vitesse's management's quarterly guidance was of interest to the analysts, why, and what did the analyst do with the information;

- To the extent that an analyst changed his rating of Vitesse, what information caused the analyst to changes his rating.

This opinion testimony, premised on the fact that the analyst actually read, heard, asked about, or learned about particular disclosures made by Vitesse, will aid the jury in determining the materiality of the disclosures and/or whether the defendants acted with criminal intent in committing the alleged crimes.  Accordingly, the testimony above satisfies the second prong of Rule 701.

Defendants argue that the analysts' testimony is based on their specialized knowledge, and therefore, the testimony constitutes improper lay witness opinion testimony.  The Government must not elicit testimony regarding what the analyst believed Vitesse should have disclosed; or how Vitesse should have accounted for its revenue and stock options financials; or let the analyst hypothesize as to how any alternative disclosure would have affected his analysis at the relevant time.  Moreover, any opinion testimony must not be based on any generalized or

specific knowledge of the semiconductor or technology industries, but rather must be limited to what the analyst read, heard, asked about, and/or otherwise learned about Vitesse from its disclosures.  Limited to such, the proposed testimony will not be based on any specialized knowledge, but rather will be based on the unique opportunity that their position as securities analysts affords the witnesses in receiving all of Vitesse's disclosures and being able to participate on the conference calls.[11]  See Rigas, 490 F.3d at 222 (2d Cir. 2007) (Affirming the introduction of lay witness testimony by "someone who has gone through the books and records and [who] will testify to what the books and records reflect"  but not  regarding 'the appropriateness of [the] accounting treatment.'"); Bank of China, 359 F.3d at 181 (noting that "to the extent [the witness's] testimony was grounded in the investigation he undertook in his role as a Bank . . . employee, it was admissible pursuant to Rule 701 of the Federal Rules of Evidence because it was based on his perceptions.")

    This ruling, allowing security analyst testimony on limited subjects, does not contradict the Court's prior order precluding expert testimony.  The analyst's testimony is limited to: what the analyst learned about Vitesse (based on his position as an analyst) from Vitesse's disclosures at the relevant time (i.e. his percipient knowledge of Vitesse's disclosures); which disclosures were of interest to the analyst; and the effect of these disclosures on the analyst's reports.  By contrast, the Defendants sought to introduce expert testimony, from witnesses without any

---

[11] The testimony at trial demonstrates that Vitesse, and specifically Tomasetta and Hovanec, proactively provided guidance to the analysts, and were concerned with the analysts' opinions.  See Mar. 27, 2012 Tr. at 456-57(Currie testified that he "spen[t] a lot of time" with Tomasetta to "come up with the right language" for press releases); see also GX 101-120 (Vitesse's press releases, which discuss Vitesse's revenue and include quotes by Tomasetta); Mar. 27, 2012 Tr. at 531-32 (Lewis testified on direct that "company management" gave guidance, and that "We [Board Members] all would read the financial objectives, the financial reports of the Wall Street people and we were always interested in these, are what we're doing, what we think we're going to do, how does that compare with what the outside world thinks because it is something you need to be aware of.")

percipient knowledge, that the Court found to be irrelevant, confusing, and would invade the

province of the jury by opining on whether the disclosures would have been material. (See

generally, Dkt. No. 67.) Accordingly, the Court will not reconsider its ruling on expert witnesses

in light of this order.

## CONCLUSION

The Government's motion for reconsideration is GRANTED.  Security analysts may

testify subject to the limitations discussed above.

Dated: New York, New York
       March 30, 2012

SO ORDERED

PAUL A. CROTTY
United States District Judge